OPINION
{¶ 1} Appellants, Kathleen and Wayne Thaler, appeal from the trial court's award of summary judgment in favor of appellees, William and Joan Zovko, finding that the Thalers knew of the condition of the sump pump and basement wall prior to completing the purchase of the property and chose to purchase it anyway. There is no evidence in the record before us that the Zovkos experienced water intrusion problems on the property other than those stated on the Residential Property Disclosure Form and verbally disclosed as evidenced by the Zovko's affidavit. The home was purchased *Page 2 
"as is," and the Thalers had their option to have the home inspected by a company of their own choosing. Thus, the doctrine of caveat emptor applies as there is no evidence in the record of fraudulent misrepresentation or fraudulent concealment of a known material fact. Therefore, we must affirm the judgment of the trial court.
 {¶ 2} Substantive and Procedural Facts
 {¶ 3} The Thalers filed a complaint in the Lake County Court of Common Pleas asserting claims of fraudulent misrepresentation, and/or concealment, and praying for a judgment in excess of $15,000 for repairs done on their leaky sump pump and cracked basement walls of the home they had recently purchased from the Zovkos on May 30, 2007.
 {¶ 4} The Zovkos moved for summary judgment, asserting that they had disclosed on the Residential Property Disclosure Form a broken water line and that Mr. Zovko had verbally disclosed a sump pump failure they had experienced in 1996 at which time they replaced the sump pump and installed a back-up system. The Zovkos also asserted the following: the Thalers exercised the option in the purchase agreement for an inspection; the Thalers' inspector and Mr. Thaler discussed the crack in the basement wall; and the Thalers did nothing further regarding the inspection findings, instead choosing to close the sale of the home.
 {¶ 5} Evidentiary material submitted in support of the Zovkos' motion for summary judgment were the depositions of Mr. and Mrs. Thaler, a sketch by Mr. Thaler, a letter from Miller Plumbing, a report from Ohio State Waterproofing, affidavits from both Mr. and Mrs. Zovko, a mold report, and the Thalers' responses to the Zovkos' interrogatories. *Page 3 
 {¶ 6} In response, the Thalers filed a brief in opposition to the Zovkos' motion for summary judgment, reiterating the allegations of their complaint. The Zovkos filed a reply to the Thalers' brief in opposition submitting affidavits of neighbors the Thalers had testified in their depositions they had spoken to about the Zovkos' previous flooding problems. All averred they had no specific knowledge regarding water intrusion at the Zovkos' home, but rather, that they had made comments about water intrusion in the neighborhood in general.
 {¶ 7} This dispute began roughly three weeks after the sale of the home, when there was a violent storm that caused a blackout and flooding in the neighborhood. The Thalers, who were in the process of moving in, noticed that the power was out and the main sump pump was not working. Mr. Thaler asserted there was water intrusion in the basement as a result of the storm because the back-up sump pump was not installed correctly. Although there was no standing water, the water intrusion was evidenced by the wet socks that were lying on the basement floor.
 {¶ 8} It is undisputed that prior to closing the Thalers elected to have an inspection, as provided in the "as is" clause in the purchase agreement. A general home inspection was conducted by Great Lakes Home Inspection, Inc. Their inspector noted the crack in the basement wall, and further opined that "it was not a problem." The Thalers chose not to inspect the crack further or further question the Zovkos on the issue.
 {¶ 9} Mr. Thaler, who is a journeyman plumber, licensed and certified by the state of Ohio, installs such sump pumps and performs analyses of water intrusion in the course of his work. In his deposition, he stated that he personally did not investigate the *Page 4 
sump pump further, although he testified that he was aware of the condition and had unimpeded access to the home to further inspect. He did not do so because he did not have a flashlight.
 {¶ 10} After the flooding, Mr. Thaler determined that the basin of the sump pump should have been dug deeper so that it could be activated by a lower level of water seepage. He drew a sketch of his findings as to the sump pump, which he then gave to his employer, Dan Miller, for an "expert" opinion. Mr. Miller, without inspecting the property, opined that the basin should have been dug deeper. Mr. Thaler then made a second sketch to evidence the changes he made after the flooding, noting that there was a band in the sump pump that had "blown up," which had caused the water to collect in the drains, thus it was not pumping out the water as it was supposed to.
 {¶ 11} The Thalers hired Ohio State Waterproofing to correct the problem. That company did not follow Mr. Thaler's suggestion or Mr. Miller's expert opinion, but instead installed a system of inside and outside footer drains and pumps to move the water. It was the waterproofing company's opinion that the source of the water intrusion was the cracks in the wall in the basement and the back patio, and that the extent of the cracks or water intrusion problem was not discoverable until their repairs were already in progress.
 {¶ 12} Mrs. Thaler testified in her deposition that she spoke with several neighbors and a man who had been driving by after the storm, and that all of them had told her that the area had water problems. Although she was requested to, she did not identify the neighbors. She further testified that she did not have any specific *Page 5 
knowledge that the neighbors had actually been in the house, or that they knew the Zovkos had water problems in the past.
 {¶ 13} The Zovkos, however, provided affidavits from each of the four neighbors with their reply brief, including the man who was driving by in his vehicle. All averred they did not know of any specific water problems that the Zovkos may have had, and further, that they had been making comments about flooding in the general area.
 {¶ 14} The trial court, after reviewing all of the evidence, concluded that the doctrine of caveat emptor applied, as the Thalers purchased the property "as is" after exercising their right to have an inspection. At the time of the inspection they had notice of the condition of the sump pump and cracked basement wall. They, however, chose not to conduct a further inspection or further question the Zovkos.
 {¶ 15} The trial court found no evidence of fraudulent misrepresentation or concealment. Rather, the purchase agreement indicated that the Thalers sought a general home inspection, that they waived professional inspections of the septic system, water potability, and well flow rate; and that they did not terminate the purchase agreement based on any defect, even after their inspection revealed the "open and obvious" crack on the basement wall. The trial court found that the Thalers failed to introduce any evidence that the Zovkos experienced water problems other than those stated on the Residential Property Disclosure Form, or any evidence that they misrepresented or concealed water intrusion problems other than those disclosed. Thus, finding no evidence of misrepresentation and/or concealment, the trial court awarded summary judgment to the Zovkos.
 {¶ 16} The Thalers now timely appeal, raising two assignments of error: *Page 6 
 {¶ 17} "[1.] The trial court committed prejudicial error against plaintiffs-appellants when it granted defendants-appellees' motion for summary judgment when defendants-appellees failed to file their motion with the clerk of courts.
 {¶ 18} "[2.] The trial court committed prejudicial error against the plaintiffs-appellants in concluding that there was no genuine issue of material fact warranting denial of summary judgment."
 {¶ 19} Failure to File Motion
 {¶ 20} In their first assignment of error, the Thalers contend that the Zovkos' motion for summary judgment should never have been granted because it was not correctly filed with the clerk of courts pursuant to Civ. R. 5(D). Specifically, the Thalers argue that the trial court's judgment must be reversed and remanded because the Zovkos' motion for summary judgment does not appear on the court docket. Because of this, the Thalers contend that the trial court did not consider all the evidence in awarding summary judgment in favor of the Zovkos.
 {¶ 21} This assignment of error is moot, however, because the Zovkos presented date-stamped copies of the documents in question to this court, and consequently, we remanded the case to allow the trial court to correct the docket to reflect the filing of the Zovkos' motion for summary judgment, along with the notice of filing of the Thalers' depositions, as well as the actual transcripts. Upon remand the trial court issued a judgment entry, ordering the docket to be corrected because although the motion and depositions were properly filed, as was evidenced by the time-stamped copies, they were not docketed due to a clerical error on the part of the clerk of courts. While the court found that no time-stamped copies of the depositions could be located, the court *Page 7 
did find that not only were they filed, but they were also considered, and so should accordingly be noted on the docket and included in the record. Thus, the court instructed the clerk to supplement the record by docketing the Zovkos' motion for summary judgment, the notice of filing of depositions of both Mr. and Mrs. Thaler, as well their deposition transcripts, all of which were considered by the court in ruling on the Zovkos' motion for summary judgment.
 {¶ 22} Accordingly, this assignment of error is moot, as there was no failure to file the motion and supporting evidence by the Zovkos or a failure on the part of the trial court to consider all the evidence, but merely a clerical error on the part of the clerk of courts who failed to reflect the filings on the docket.
 {¶ 23} Summary Judgment Standards
 {¶ 24} In their second assignment of error, the Thalers assert that a genuine issue of material fact exists as to whether the Zovkos fraudulently misrepresented and/or fraudulently concealed the water problems in the basement. Specifically, the Thalers argue that the evidence the Zovkos submitted with their motion for summary judgment refutes the Zovkos' position that they did disclose the cracked basement walls and their past water intrusion problems. We find this argument to be without merit as the Thalers did not submit any evidence that rebutted the Zovkos' motion, and further, failed to submit any evidence of fraudulent misrepresentation and/or concealment for a defect of which the Thalers were already aware of when they purchased the home.
 {¶ 25} "Pursuant to Civ. R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Holik v. Richards, 11th Dist. No. 2005-A-0006, 2006-Ohio-2644, ¶ 12, *Page 8 
citing Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party. Id. citing Civ. R. 56(C). Further, the standard in which we review the granting of a motion for summary judgment is de novo. Id., citingGrafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105." Welch v.Ziccarelli, 11th Dist. No. 2006-L-229, 2007-Ohio-4374, ¶ 36.
 {¶ 26} "Accordingly, `[s]ummary judgment may not be granted until the moving party sufficiently demonstrates the absence of a genuine issue of a material fact. The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.'Bruenstetter v. Keating, 11th Dist. No. 2002-T-0057, 2003-Ohio-3270, ¶ 12, citing Dresher at 292. `Once the moving party meets the initial burden, the nonmoving party must then set forth specific facts demonstrating that a genuine issue of material fact does exist that must be preserved for trial, and if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' Bruensetter at ¶ 12, citing Dresher at 293." Id. at ¶ 37.
 {¶ 27} "Since summary judgment denies the party his or her `day in court' it is not be viewed lightly as docket control or as a `little trial'. The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In Dresher v.Burt, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that *Page 9 
demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ. R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ. R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ. R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in Mitseff v. Wheeler (1988), 38 Ohio St.3d 112." Id. at ¶ 40.
 {¶ 28} "The court in Dresher went on to say that paragraph three of the syllabus in Wing v. Anchor Media, Ltd. Of Texas (1991),59 Ohio St.3d 108, is too broad and fails to account for the burden Civ. R. 56 places upon a moving party. The court, therefore, limited paragraph three of the syllabus in Wing to bring it into conformity withMitseff." Id. at ¶ 41.
 {¶ 29} "The Supreme Court in Dresher went on to hold that when neither the moving nor nonmoving party provides evidentiary materials demonstrating that there are no material facts in dispute, the moving party is not entitled to a judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the *Page 10 
basis for the motion, `and identifying those portions of the record which demonstrate the
absence of a genuine issue of fact on a material element of the nonmoving party's
claim.' Dresner at 276." Id. at ¶ 42.
 {¶ 30} Caveat Emptor and Fraudulent Misrepresentation and/orConcealment
 {¶ 31} "The doctrine of caveat emptor is designed to finalize real estate transactions by preventing disappointed real estate buyers form litigating every imperfection existing in residential property."Belluardo v. Blankenship (June 4, 1998), 8th Dist. No. 72601, 1998 Ohio App. LEXIS 2409, 7, citing Laymen v. Binns (1998), 35 Ohio St.3d 176,177. "The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the opportunity to examine the premises, and (3) there is no fraud on the part of the vendor. (Citations omitted.) * * *" Kimball v. Duy, 11th Dist. No. 2002-L-046, 2002-Ohio-7279, ¶ 21, citing Layman, syllabus.
 {¶ 32} In this case, there is no question from the evidentiary materials in the record that the Thalers were aware of condition of the sump pump and cracked wall, and that they had unimpeded access to inspect the property prior to purchase. The Thalers exercised their option to have an inspection per the purchase agreement, actually discussed the crack with their inspector, who opined it was "no problem," and chose not to inspect or question the Zovkos any further. In fact, Mr. Thaler is a plumber who conducts these very analyses in his profession. He testified that he did not further inspect because he did not have a flashlight at the time of the inspection. He testified *Page 11 
that he had unencumbered access to the property, and thus, could have procured a flashlight and conducted an inspection at any time.
 {¶ 33} "Aware of a possible problem, the buyer has a duty to either (1) make further inquiry of the owner who is under a duty not to engage in fraud, * * *, or (2) seek the advice of someone with sufficient knowledge to appraise the defect." Durica v. Donaldson (Mar. 3, 2000), 11th Dist. No. 97-T-0183, 2000 Ohio App. LEXIS 789, 11, citingTipton v. Nuzum (1992), 84 Ohio App. 3d 33, 38.
 {¶ 34} The Thalers assert that the Zovkos failed to disclose the extent of the water intrusion problem. They argue the crack and water intrusion problems were much more severe than the Zovkos disclosed, ergo they either fraudulently misrepresented the condition or concealed their knowledge of the extent of the problem. The record before us, however, is devoid of any evidentiary materials which support this argument.
 {¶ 35} The purchase agreement between the Thalers and the Zovkos contained an "as is" clause, which provided in relevant part:
 {¶ 36} "After each inspection requested, BUYER shall have three (3) days to elect one of the following: a) Remove the inspection contingency and accept the property in its `AS IS' PRESENT PHYSICAL CONDITION, or b) Accept the property subject to SELLER agreeing to have specific items, that were either previously disclosed in writing by the SELLER or identified in a written inspection report, repaired by a qualified contractor in a professional manner at SELLER'S expense; or 3) Terminate this AGREEMENT if written inspection report(s) identify material latent defects not previously disclosed in writing by SELLER and any cooperating real estate Broker." *Page 12 
 {¶ 37} "[W]hen a buyer agrees to accept property `as is,' the seller is relieved of any duty to disclose latent defects." Durica at 11, quoting Bagdasarian v. Lewis (June 4, 1993), 11th Dist. No. 92-L-171, 1993 Ohio App. LEXIS 2881, 5, citing Kaye v. Buehrie (1983),8 Ohio App.3d 381, 383. See, also, Tipton at 38.
 {¶ 38} That being said, an "as is" contract relieves a seller only of the duty of disclosing latent defects, it does not "bar a buyer from asserting claims of fraudulent misrepresentation or fraudulent concealment" as the Thalers claim. Durica at 12.
 {¶ 39} "To prevail upon a claim of fraudulent misrepresentation, `the injured party must establish justifiable reliance upon the representations made by the defendants.'" Chamar v. Schivitz, 11th Dist. No. 2002-L-181, 2004-Ohio-1957, ¶ 13, citing Kimball at ¶ 23, quotingMasso v. Genco (Mar. 1, 1999) 11th Dist. No. 89-L-14-162, 1991 Ohio App. LEXIS 867, 7. "To prevail upon a claim of fraudulent concealment, the injured party must establish: (1) actual concealment of a material fact; (2) with knowledge of the fact concealed; (3) and intent to mislead another into relying upon such conduct; (4) followed by actual reliance thereon by such other person having the right to so rely; (5) and with injury resulting to such person because of such reliance." Id., citingBagdasarian at 6-7.
 {¶ 40} Specifically, the Thalers argue that the evidence the Zovkos submitted with their motion for summary judgment actually supports their position. The Thalers cite to Ohio State Waterproofing's report documenting findings made "upon arrival and in the course of working" including water damage on the walls and floors; black mold on the drywall under the baseboard; major cracks on the walls in the laundry room; water from the back patio coming in through cracks and flooding basement and water under *Page 13 
the floor. The report offered an opinion that these problems "did not develop overnight and probably took a number of years to get to this point." But neither the Ohio State Waterproofing report nor the Wexford mold testing report provide any evidence, directly or inferentially, that the Zovkos were aware of any of these conditions, which were not already disclosed and that they concealed same. The same may be said of the letter from Miller Plumbing.
 {¶ 41} Thus, the issue is one of latent defects, as both the Ohio State Waterproofing report and mold analysis make clear that the extent of the damage was only discoverable once the cracks were being repaired. Even if there was evidence in the record of actual concealment, which there is not, the Thalers' own depositions close the door on their allegations that the Zovkos knowingly concealed any defects.
 {¶ 42} Specifically, both Mr. and Mrs. Thaler were asked during their depositions about what evidence they had to support the allegation in their complaint that the Zovkos had knowledge of prior water problems. Mrs. Thaler testified that evidence of the Zovkos' prior knowledge was contained in the mold report, the waterproofing company report, and her conversations with the neighbors. Mr. Thaler testified that the only evidence he had to prove that the Zovkos knew of prior water problems were from the various conversations he and his wife had with the neighbors. When asked whether he had any other evidence as to the Zovkos' knowledge of the condition, he answered, "[t]hat's it."
 {¶ 43} Neither the Ohio State Waterproofing report, however, nor the mold report give any indication, even inferentially, that the Zovkos knew or should have known of the extent of the defect. In fact, both reports indicate that the extent of the damage was *Page 14 
not fully discoverable until the repairs were underway. The neighbors' affidavits specifically contradicted the Thalers' depositions, as all the neighbors averred they had been speaking of the water in the neighborhood in general and they had no specific knowledge about water intrusion problems in the Zovkos' home.
 {¶ 44} The Thalers also argue that the Zovkos did not disclose the 1996 water intrusion incident either verbally before the transaction, or in writing in the Residential Property Disclosure Form. In the Zovkos' affidavit it was averred that Mr. Zovko verbally disclosed to Mr. Thaler that the sump pump had failed in 1996 causing water intrusion, and as a result, the Zovkos made an insurance claim, remodeled the basement, and replaced the sump pump. No date is given for this disclosure. Mrs. Thaler testified that she was first told of the 1996 water intrusion problem only after the closing on May 30, on June 19, 2007.
 {¶ 45} While the Residential Property Disclosure Form does disclose that the water line broke and had been replaced, no mention is made of the 1996 problem. While it would appear at first blush that a question of fact remains as to when the 1996 water intrusion was disclosed, it is critical and fatal to the Thalers' claim that the Residential Property Disclosure Form does not impose a duty on the seller to disclose any repairs to "mechanical systems," which specifically includes sump pumps, beyond five years. As they purchased the home in 2007, there was no duty on the part of the Zovkos to disclose in the Residential Property Disclosure Form the sump pump replacement that occurred approximately eleven years ago.
 {¶ 46} As to the Thalers' allegations of Mr. Zovko's testimony at his deposition, Mr. Zovkos' deposition is not a part of the record as the Thalers' failed to submit the *Page 15 
deposition into evidence. Finally, it is critical that both of the Thalers testified in their depositions they knew of the condition of the sump pump and of the crack in the basement wall prior to the closing.
 {¶ 47} Quite simply, apart from the bare allegations in their complaint and argument in brief in opposition to the Zovkos' motion for summary judgment, the Thalers failed to submit any evidence of a misrepresentation or concealment on the part of the Zovkos. There is no evidence that the Zovkos were aware of the extent of the water problems beyond which they disclosed.
 {¶ 48} It bears repeating that the "doctrine of caveat emptor is designed to finalize real estate transactions by preventing disappointed real estate buyers from litigating every imperfection existing in residential property," especially, where, as is the case here, there is no fraud and the buyers were well aware of the defect, yet they chose not to inspect further and purchased the property. Belluardo at 7.
 {¶ 49} We agree with the trial court that the only conclusion that can be drawn in this case is that summary judgment should be granted in favor of the Zovkos.
 {¶ 50} The Thalers' second assignment of error is without merit.
 {¶ 51} The judgment of the Lake County Court of Common Pleas is affirmed.
 DIANE V. GRENDELL, P.J., and TIMOTHY P. CANNON, J., concur. *Page 1