[Cite as *Cianfaglione v. Lake Natl. Bank*, 2019-Ohio-1299.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| ANGELA S. CIANFAGLIONE, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2018-L-097** |
| LAKE NATIONAL BANK (nka ERIE BANK), et al., | : | |
| Defendants-Appellees. | ; | |
| | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2017 CV 000029.

Judgment: Affirmed.

*L. Bryan Carr*, Carr, Feneli & Carbone Co., L.P.A., 1392 S.O.M. Center Road, Mayfield Heights, OH 44124 (For Plaintiff-Appellant).

*Michael John Meyer*, Benesch, Friedlander, Coplan & Aronoff LLP, 200 Public Square, Suite 2300, Cleveland, OH 44114 (For Defendants-Appellees, Lake National Bank, Lisa Lawrence and Timothy Flenner).

*Joshua T. Morrow*, Mansour Gavin, LPA, North Point Tower, 1001 Lakeside Avenue, Suite 1400, Cleveland, OH 44114 (For Defendant-Appellee, Andrew Cianfaglione).

MATT LYNCH, J.

{¶1} Plaintiff-appellant, Angela S. Cianfaglione, now known as Angela Grajzl, appeals from the judgment of the Lake County Court of Common Pleas, granting summary judgment in favor of defendants-appellees, Lake National Bank (now known as Erie Bank), Lisa Lawrence, Timothy Flenner, and Andrew Cianfaglione, on Grajzl's claims

relating to an alleged forgery of her signature on mortgage paperwork. The issues to be determined in this case are whether a plaintiff can recover on claims for fraud, negligence, and conspiracy when her spouse's forging of her signature does not cause her a financial detriment and whether employees of a bank who process a mortgage are considered "suppliers" for the purposes of the Ohio Consumer Sales Practices Act. For the following reasons, we affirm the decision of the lower court.

{¶2} On January 6, 2017, Grajzl filed a Complaint against Lake National Bank, bank employee Lisa Lawrence, John Does 1 and 2, and her ex-husband, Andrew Cianfaglione. The Complaint alleged that Cianfaglione enlisted the bank and its employees to fraudulently open an equity line of credit secured by a mortgage on the couple's marital home, located at 13842 Radcliffe Road, Leroy Township, without Grajzl's permission and that they conspired to forge her signature on the mortgage. It contended that Cianfaglione signed her name and the other parties assisted him by notarizing the signature.

{¶3} The Complaint raised seven counts: Civil Conspiracy; Negligence; Fraud; Violation of the Truth in Lending Act/Unfair, Deceptive, or Unconscionable Acts or Practices; Breach of Duty/Covenant of Good Faith and Fair Dealing; Punitive Damages; and Injunctive Relief, the nature of which was unspecified. Attached was a copy of the mortgage, which contained the purported signatures of both Grajzl and Cianfaglione, with the mortgage identifying Grajzl as "signing for dower rights only."

{¶4} Grajzl filed an Amended Complaint on April 6, 2017, replacing references to John Doe with Timothy Flenner, the Vice President of Commercial Lending for Erie Bank, and recognizing that Lake National Bank is now identified as Erie Bank.

2

{¶5} Cianfaglione filed a Motion to Dismiss on April 13, 2017, on the grounds that Grajzl suffered no damage from his signing of her name on the mortgage. The court subsequently denied this motion as being based on references to matters beyond the face of the Amended Complaint.

{¶6} Erie Bank and Flenner filed separate Answers to the Amended Complaint on April 20, 2017. Lawrence filed an Answer on January 16, 2018. Following a request to amend, Cianfaglione filed an Answer and Counterclaim on March 1, 2018, raising counterclaims for Abuse of Process, Frivolous Conduct, and Punitive Damages.

{¶7} Grajzl moved to dismiss the counterclaims and on March 26, 2018, the trial court granted the motion due to Cianfaglione's failure to assert a claim entitling him to relief.

{¶8} Cianfaglione filed a Motion for Summary Judgment on June 11, 2018. He argued that his actions resulted in no harm to Grajzl and that the disposition of the parties' property and liabilities, including the loan and mortgage in question, had already been litigated and decided by the Lake County Court of Common Pleas, Domestic Relations Division, in Case No. 15-DR-000290. The remaining defendants also filed a Motion for Summary Judgment on the same date, arguing that various elements, including damages, were not met as to Grajzl's causes of actions.

{¶9} Grajzl filed a Motion for Summary Judgment on the same date, in which she argued that liability was proven as to her claims. In her Brief in Opposition to the defendants' Motions, she contended she suffered various damages, including payments made by Cianfaglione toward the Erie Bank loan from marital funds.

{¶10} The following pertinent deposition testimony and exhibits were presented

3

on summary judgment:

**{¶11}** Andrew Cianfaglione testified that he and Grajzl were married in June 1986 and divorced in September 2017. He resides at 13842 Radcliffe Road, which was the marital home. During their marriage, Cianfaglione purchased Cianfaglione Enterprises, which owns a car wash. The car wash was encumbered by a loan from PNC Bank. Cianfaglione testified that he generally controlled the finances relating to the car wash. Upon receiving threats of foreclosure, Grajzl and Cianfaglione entered into an agreement with Tomcat Partners, LLC, for Tomcat to purchase the loan from PNC Bank for $175,000. They signed an agreement guaranteeing this loan. Grajzl stated that she would not sign any documents relating to financing after this and told Cianfaglione to "do whatever [he] had to do." Cianfaglione obtained a loan of $125,000 from Key Bank to pay the debt to Tomcat.

**{¶12}** Cianfaglione then sought an equity line of credit mortgage on the parties' marital home through Erie Bank with a credit limit of $60,700. He admitted that he signed Grajzl's name on the mortgage and she was not present at the bank when the paperwork was completed and notarized. Cianfaglione testified that he made payments on the line of credit while the couple was still married and he continues to make them.

**{¶13}** Angela Grajzl testified that she did sign an agreement with Tomcat to obtain the loan toward the car wash and that Cianfaglione obtained the Key Bank loan. When Cianfaglione advised her at one point that he wanted to seek a mortgage on their home to pay the loans, she informed him she "would absolutely not sign any more mortgages with him." She testified that Cianfaglione signed her name to the mortgage document with Erie Bank without her knowledge or permission and admitted to doing so during their

4

divorce proceedings. Grajzl stated she did not make payments toward that mortgage and was unsure where the funds for the payments came from, although she believed they were paid from the car wash bank accounts.

{¶14} A Judgment Entry of Divorce issued on September 26, 2017, was presented as an exhibit, in which the domestic relations court found that Cianfaglione acknowledged signing Grajzl's name to the Erie Bank mortgage without her permission, that he had paid the mortgage since the separation, and the evidence showed the proceeds were used exclusively for the car wash. It determined the parties' equity in the home without taking into account the decreased value that had resulted from the Erie Bank mortgage since it found the equity line of credit to be "the sole responsibility" of Cianfaglione. As to the car wash, the court determined that it should be sold and the proceeds divided equally. The court ordered that each party should be responsible for his or her own attorney's fees.[1]

{¶15} Timothy Flenner, Vice President of Commercial Lending for Erie Bank, testified that he knew Cianfaglione's parents and had been made aware that Cianfaglione needed a loan for his car wash. He testified that although he was named on the mortgage document in question, he did not recall being present when Cianfaglione signed his name on the mortgage documentation and was unaware that he had signed it for Grajzl.

{¶16} Lisa Lawrence was an Erie Bank employee who notarized the mortgage document. While Cianfaglione was present, she was told that Grajzl had to go to work. She did not see either Grajzl or Cianfaglione sign the mortgage but notarized it since she had been requested to do so.

---

1. An appeal from this judgment was filed in *Cianfaglione v. Cianfaglione*, 11th Dist. Lake No. 2017-L-134, 2019-Ohio-71. This court affirmed in part and reversed in part the lower court's decision, holding that the lower court should clarify on remand inconsistent findings made in relation to whether loan proceeds were used to pay for a marital asset. It also affirmed the court's decision denying an award of attorney's fees.

{¶17} On July 30, 2018, the trial court issued a Judgment Entry, granting summary judgment in favor of the defendants and against Grajzl. As to the claims for Conspiracy, Fraud, and Negligence, the court found that Grajzl failed to demonstrate that she suffered damages since the equity in the home was distributed as though the mortgage did not exist and that she was not impacted by losing a dower right. As to attorney's fees, the court found there was no law presented to demonstrate that fees from a domestic relations action are recoverable in a separate proceeding. The court also found no basis for the Consumer Sales Practices Act action since none of the parties were suppliers who handled consumer transactions. The remaining three counts were also found meritless. The court emphasized that it "does not condone" the actions of the defendants but there was no issue of material fact on the causes of action raised by Grajzl.

{¶18} Grajzl timely appeals and raises the following assignment of error:

{¶19} "The Trial Court Erred in Granting the Appellees' Motions for Summary Judgment and in Denying the Appellant's Motion for Summary Judgment."

{¶20} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."

{¶21} A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "A de novo review requires the appellate court

to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶22} Grajzl contends that the trial court erred in granting summary judgment in favor of defendants on her claims for Fraud, Civil Conspiracy, and Negligence. The court did so on the ground that she suffered no damages and, thus, it was impossible to prevail on said claims.

{¶23} Regarding the Fraud claim, Grajzl variously argues concealment and/or misrepresentation. To prevail on a claim of fraudulent misrepresentation, the plaintiff must establish "(1) a representation or, when there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that such knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) with justifiable reliance on the misrepresentation or concealment, and (6) an injury proximately caused by that reliance." *Doctor v. Marucci*, 11th Dist. Lake No. 2013-L-056, 2013-Ohio-5831, ¶ 11. Similar elements are necessary for fraudulent concealment, which also requires the actual concealment of a material fact and knowledge of the fact concealed. *Thaler v. Zovko*, 11th Dist. Lake No. 2008-L-091, 2008-Ohio-6881, ¶ 39.

{¶24} For a claim of civil conspiracy, the following must be demonstrated: "'(1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself.'" (Citation omitted.) *State ex rel. Fatur v. Eastlake*, 11th Dist. Lake No. 2009-L-037, 2010-Ohio-1448, ¶ 45. Finally, as to negligence, "the plaintiff must establish that (1)

the defendant owed a duty to him; (2) the defendant breached that duty; (3) the defendant's breach of duty proximately caused his injury; and (4) he suffered damages." *Francis v. Loviscek*, 11th Dist. Lake No. 2017-L-167, 2018-Ohio-4279, ¶ 31.

{¶25} As is evident from the elements of these causes of action, each requires damages or an injury in order for a plaintiff to prevail. Thus, while Grajzl argues that the various other elements of these claims were met, this is generally not disputed by Cianfaglione and the trial court did not address these elements due to its finding that there were no damages. As such, we must examine whether there was a genuine issue of material fact as to damages.

{¶26} First, although Grajzl claimed throughout the proceedings that her credit would be harmed by being obligated to pay on the equity loan, she did not execute the note or the mortgage and was not an obligor. Further, as stated on the mortgage, the signature (although not hers) related only to her dower rights, also not creating an obligation to pay. The domestic relations court repeatedly held in its distribution of the parties' property and obligations that only Cianfaglione was required to pay this loan.

{¶27} Grajzl next argues that she was entitled to $30,000 since the home equity loan reduced the overall equity of the marital residence by $60,000 and also that she was harmed since Cianfaglione used marital funds to pay the Erie Bank loan while they were still married. It is initially noteworthy that in the appeal of the domestic relations court's decision, this court remanded based on two competing, inconsistent factual findings, but found that, if the line of credit was used to pay a marital asset, it would be inequitable for Grajzl to solely retain the benefit of the loan, and, alternatively, if the loan could not be traced to a specific payment for the car wash, it is equitable for Cianfaglione to be solely

8

responsible for the debt. *Cianfaglione*, 2019-Ohio-71, at ¶ 19-21.

{¶28} Under either set of findings, the domestic relations court's decision did not result in damages to Grajzl, as the payments preserved her interest in the car wash and, in holding Cianfaglione entirely responsible for the loan, Grajzl suffers no damage from the forgery. She is not entitled to be compensated for half of the loan amount when she either retained a benefit from it or was not responsible for paying it. Presuming payments were made with marital funds toward the loan, this is factored into the overall disposition of the remainder of the property when the entire amount of the loan is held against Cianfaglione.

{¶29} Further, while Grajzl argues she was not given any share of the home when the property was divided, this is unrelated to the mortgage but, rather, was simply part of the court's determination of how to equitably divide the parties' property. *See* R.C. 3105.171(B) (the domestic relations court must "divide the marital and separate property equitably between the spouses"). Although Grajzl also generally argues that taking out the loan "negatively affected the marital assets that were to be divided," she fails to provide any substantive argument to support this conclusion.

{¶30} Grajzl contends she suffered damages because her dower rights were impacted by the forgery. Within this claim she primarily reiterates her contention that she lost marital equity and that said equity was subordinated to Erie Bank. Initially, defendants contend that the right to dower was waived when Grajzl obtained a survivorship tenancy under the Residence Deed in 2001. Assuming, arguendo, this argument has merit, there are also several other meritorious grounds under which to find Grajzl's asserted right to dower does not entitle her to recovery. As noted above, there is nothing in the record to

9

indicate that she lost any equity from Cianfaglione's actions. Furthermore, the signing of the dower right had no impact on Grajzl. Pursuant to R.C. 2103.02, the right of dower provides that "[a] spouse who has not relinquished or been barred from it shall be endowed of an estate for life in one third of the real property of which the consort was seized as an estate of inheritance at any time during the marriage." Dower becomes vested in the surviving spouse only upon death. *Goodman v. Gerstle*, 158 Ohio St. 353, 360, 109 N.E.2d 489 (1952). Here, the right to dower never vested and, thus, Grajzl did not lose the right to an interest in her spouse's property. Any right to dower which could arguably have applied has terminated since "[d]ivorce bars an ex-spouse from any dower right." *Wells Fargo Bank, N.A. v. Kessler*, 10th Dist. Franklin No. 15AP-216, 2015-Ohio-5085, ¶ 17; R.C. 2103.02 ("Dower interest shall terminate upon the granting of an absolute divorce in favor of or against such spouse by a court of competent jurisdiction * * *.").

**{¶31}** Grajzl also argues that the trial court erred by finding that the domestic relations court already addressed damages, as such a court is generally not the proper forum to hear intentional tort claims. *Barton v. Barton*, 2d Dist. Greene No. 2015-CA-53, 2016-Ohio-5264, ¶ 27. However, we do not find that the trial court ruled that it could not consider the merits of the tort claims because they had already been addressed. Rather, what the lower court did was take into consideration the facts as they presently stand regarding the parties' property disposition and the outcome of the divorce proceedings to determine whether any damages existed upon which tort claims could be supported. The domestic relations court properly exercised its authority to divide property, including the ruling that Cianfaglione would be solely responsible for paying the Erie Bank equity line of credit. The trial court had to take into account the fact of whether there were damages

10

and in doing so, logically must consider the outcome of the property distribution in the divorce.

{¶32} As a final argument on the issue of damages, Grajzl asserts that she was entitled to attorney's fees. The attorney's fees requested in this matter relate to those expended in the domestic relations case. Grajzl requested attorney's fees before that court, which request was denied. She now again attempts to receive said attorney's fees but does not cite any authority for the proposition that a prior determination as to attorney's fees can be altered by a different court.

{¶33} We reject Grajzl's argument that the fees should be considered compensatory damages. The fact that a domestic relations attorney must argue before the court various grounds under which a client may be entitled to recovery (such as that Grajzl was entitled to additional equity arising from Cianfaglione's conduct) due to the actions of the other spouse, is not uncommon. We are unaware of precedent that would allow this court to ignore a domestic relations court's determination of attorney's fees and allow a common pleas court to make a different decision.

{¶34} In fact, this court has already considered the propriety of the domestic relations court's ruling on appeal in *Cianfaglione*, 2019-Ohio-71. On appeal, Grajzl raised the specific argument that the "court abused its discretion in failing to award her attorney fees and expenses incurred in the divorce, claiming that [Cianfaglione] was deceptive and evasive during the proceedings and that the court witnessed his forgery as well as his concealment of assets and misrepresentation of facts." *Id.* at ¶ 26. In other words, she raised the exact argument that she was entitled to attorney's fees because Cianfaglione misrepresented facts and forged Grajzl's signature. This court found no abuse of

11

discretion in the trial court's determination not to award attorney's fees on those grounds. *Id.* at ¶ 33-34. The domestic relations court was free to award attorney's fees if it determined it was equitable under a variety of considerations, including the conduct of the parties and "any other relevant factors the court deems appropriate." R.C. 3105.73(A). The court had before it evidence of forgery and determined that no attorney's fees were warranted, a decision we find no ground to second guess in the context of a tort claim.

**{¶35}** Finally, Grajzl takes issue with the court's grant of summary judgment against her on the Ohio Consumer Sales Practices Act claim.[2]

**{¶36}** R.C. 1345.02(A) provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." Consumer transactions include the "sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A). "[I]n a consumer transaction in connection with a residential mortgage, 'seller' means a loan officer, mortgage broker, or nonbank mortgage lender." R.C. 1345.01(C).

**{¶37}** Pursuant to R.C. 1345.02(F):

Concerning a consumer transaction in connection with a residential

mortgage, and without limiting the scope of division (A) or (B) of this

2. Although the appellees address the claims relating to punitive damages, good faith and fair dealing, and injunctive relief, since Grajzl did not raise any specific errors about these claims in her brief, we need not consider them.

12

section, the act of a supplier in doing either of the following is deceptive:

(1) Knowingly failing to provide disclosures required under state and federal law;

(2) Knowingly providing a disclosure that includes a material misrepresentation.

{¶38} Grajzl argues that misrepresentations were made surrounding the forgery of her signature of which the bank and its employees were aware and that their conduct falls under R.C. 1345.02(F) since the acts related to a residential mortgage. The lower court held that the defendants were not suppliers under the statute, transactions with national banks are not covered, and employees of banks are not "loan officers" under the terms of the statute.

{¶39} While Grajzl concludes that Flenner and Lawrence were "acting as loan officers" based on testimony presented at trial, qualifying them as "suppliers" under R.C. 1345.01 and .02, the law provides otherwise. While the term "supplier" does include loan officers, R.C. 1345.01(H)(2) specifically provides that a loan officer "does not include an employee of a bank, savings bank, savings and loan association, credit union, or credit union service organization organized under the laws of this state, another state, or the United States." Grajzl does not address this issue, nor does she dispute that Lake National, now Erie Bank, was a national bank. Further, R.C. 1345.01(A) provides that consumer transactions do not include transactions with financial institutions, except in certain circumstances not present here. *See Id.* ("'Consumer transaction' does not include transactions between persons, defined in sections 4905.03 and 5725.01 of the

13

Revised Code * * *"); R.C. 5725.01(A)(1) (defining a financial institution as including a national bank). Grajzl also raises no specific argument that Cianfaglione falls under this section, as there is no credible argument that he is a "supplier" or was "engaged in the business of effecting or soliciting consumer transactions" as required by R.C. 1345.01(C).

{¶40} Based on the foregoing, we do not find that the trial court erred in its rulings on summary judgment or that Grajzl has raised any arguments warranting a finding of error. While we echo the trial court's concern with the conduct of the defendants surrounding the mortgage and loan transaction, it does not follow that the claims raised by Grajzl have merit.

{¶41} The sole assignment of error is without merit.

{¶42} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, granting summary judgment against Grajzl and in favor of the defendants, is affirmed. Costs to be taxed against appellant.


THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

14